GRACE PIM DRAKE, petitioner-appellant,

*v.*

HOWARD WESLEY DRAKE, defendant-respondent.

[Submitted May 27th, 1932.  Decided October 17th, 1932.]

On appeal from a decree of the court of chancery advised by Advisory Master Child, who filed the following opinion:

"The parties to this suit were married on the 23d day of January, 1907, in the State of Pennsylvania and moved to New Jersey on the 13th of April, 1922, taking up their residence in East Orange, New Jersey, where they have lived since that time. The residence of the parties is satisfactorily proved.

"The petitioning wife says that beginning in 1922 the defendant, without any justification, would become enraged and charge the petitioner with being an immoral woman, and constantly demanded money from the petitioner; that in the month of October, 1923, the defendant threatened petitioner with physical violence and when the petitioner went to call for help on the telephone, defendant cut the telephone wires; that on New Year's eve, 1924, the defendant attempted to choke petitioner and that he would seize the petitioner by the arms, pressing his arms against her breast, thereby causing her great pain and causing her to become hysterical and dizzy, and that in consequence of this treatment the petitioner left the defendant on the 1st day of August, 1927.

"There are two children of this marriage, a son twenty years of age, and a daughter eighteen years of age. The son has graduated from college and the daughter is now attending college.

"The defendant in this case absolutely denies all of the charges made by the petitioner, except the one relating to the cutting of the telephone wires and the other wherein it is charged that he put his arms around the petitioner and restrained her. The petitioner also says that the defendant furnished the family with but meager support, and that they constantly quarreled over money matters and that finally she left the defendant on August 1st, 1927. With reference to the latter date, the petitioner, the defendant and the two children went to Maine and remained there approximately one month and it was after this trip to Maine that the petitioner separated herself from the defendant.

"The testimony of the petitioner with reference to the defendant's accusations relating to her misconduct is abso-

lutely uncorroborated and there is no testimony whatsoever of any acts of physical violence, except the fact that the defendant did at times restrain the petitioner when, as he says, she was hysterical, screaming and threatening to leave the house. The petitioner says that they had no trouble until just before coming to New Jersey to live. It is apparent from the testimony in this case that these parties did have trouble over finances before coming to New Jersey in 1922. The petitioner in this case, in my judgment, certainly in the latter years of her married life with the defendant, regarded that marriage as being on a purely financial basis. She had previously loaned to the defendant some money to buy a house and demanded the return of the money, consulted a lawyer and as a result of this the defendant turned over the house to the petitioner and she received the sum of $4,000, which money she had accumulated prior to her marriage. Upon coming to New Jersey the defendant bought another house, title to which was placed in his wife's name. This house, as I recall it, was purchased for some $17,000, and on this there was a first mortgage of some $8,500 and a second mortgage for several thousand dollars. This second mortgage has been reduced by payments made by the petitioner.

"The defendant has been a man of moderate earning power, earning approximately $5,000 a year. Out of this money he has supported the house and has educated his two children and is now partly paying his daughter's way through college. The daughter, an eighteen-year-old girl, corroborates her mother with respect to the defendant's violent temper and verbal abuse toward his wife. This daughter said that the defendant was profane, but upon cross-examination admitted that the only time he had been profane was when playing cards and when the cards were running against him said, "hell" or "damn," or some such words, and threw the cards down. The mental attitude of this daughter may be pictured by her conduct on Christmas eve of 1930, when she called up her father at his residence on the pretext of asking him to buy her a fur coat, but for the real purpose of ascertaining whether he was home so that he might be arrested by

a sheriff's officer on a writ of *ne exeat*. At this time the defendant was supporting his daughter. Defendant produced several letters from her, in which she addressed him as "dear sir," and in which she demanded money. I do not believe the testimony of this young woman, and think that for some reason or other, in spite of the fact that her father has supported her to the best of his ability, that she has become warped in favor of her mother to such an extent that her testimony is not to be relied upon.

"In consequence of the writ of *ne exeat* issued in this case, the defendant was incarcerated in the Essex county jail all of Christmas day, 1930, and his young son spent that day in endeavoring to get bail for him. This son since that time has held no communication with his mother. This son testifies that he never heard his father use any bad language toward his mother, and that the only time that he ever saw his father hold his mother was when his mother was attempting to leave the house when she was in a hysterical condition.

"The defendant says that the cause of their difficulties arose out of an obsession in the mind of the petitioner that he was unduly intimate with a woman named Alexander, and that this obsession continued and probably became magnified by reason of the physical condition of the petitioner. I have had an opportunity of observing both of the parties to this suit, and I believe that the petitioner's illness is responsible for her present condition. I do not believe this physical condition was caused by any act of the defendant, and feel that if the petitioner did suffer mental anguish that it was caused not by any act of the defendant, but was caused by the petitioner's unfounded belief that the defendant was guilty of improper conduct with Mrs. Alexander.

"From the testimony produced before me, it is apparent that the defendant is a man of highly nervous temperament. It does not appear that he was guilty of any violence toward the petitioner, and that on the contrary he supported his family to the best of his ability.

"I do not feel that the petitioner has made out a case of extreme cruelty and if there had been a counter-claim for

desertion filed by this defendant husband, I should have granted him a decree on a counter-claim. However, no such counter-claim was filed. The petitioner is not entitled to the relief sought, and the petition will be dismissed."

*Mr. Raymond H. Berry*, for the appellant.

*Mr. Paula Laddey*, for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion filed by Advisory Master Child.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ.   13.

*For reversal*—None.